UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

     v.                                                    Crim. No. 5:13-cr-11

John Kuhl

## REPORT AND RECOMMENDATION
(Doc. 42)

     John Kuhl, proceeding *pro se*, has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence imposed upon him in the United States District Court for the District of Vermont.  (Doc. 42.)  On August 21, 2013, Kuhl pleaded guilty to one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2).  Chief United States District Court Judge Christina Reiss sentenced Kuhl to a term of imprisonment of 60 months, to be followed by a five-year term of supervised release with special conditions.

     Attorney David L. McColgin represented Kuhl during the proceedings.  Kuhl now claims that Attorney McColgin rendered ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.  He also claims that he was denied the presumption of innocence, that the government engaged in discovery violations, and that he was the victim of police corruption.  In response to an order of the court, Attorney McColgin has filed an affidavit responding to Kuhl's claims of ineffective assistance.  (Doc. 52.)  Relying in part on Attorney McColgin's affidavit, the government argues that Kuhl's claims are meritless and that the court should deny Kuhl's

§ 2255 Motion.  (Doc. 55.)  For the reasons stated below, I find that Kuhl has failed to establish that Attorney McColgin's performance was objectively deficient or that Kuhl sustained any prejudice.  I further conclude that his other claims are either procedurally barred or waived.  I therefore recommend that Kuhl's Motion to Vacate Under 28 U.S.C. § 2255 (Doc. 42) be DENIED.

## Factual and Procedural Background

### I.  Offense Conduct and Plea of Guilty

On January 24, 2013, the grand jury returned a two-count indictment charging John Kuhl with two criminal offenses.  (Doc. 12.)  Count One charged Kuhl with knowingly possessing child pornography on or about April 20, 2011, in violation of 18 U.S.C. § 2252(a)(4).  Count Two charged Kuhl with knowingly receiving child pornography on or about February 19, 2011, in violation of 18 U.S.C. § 2252(a)(2).  (*Id.*) Both counts stemmed from conduct that—in addition to other alleged conduct not at issue here—had led to Kuhl's arrest and prosecution in Vermont state court.[1]  Attorney McColgin was appointed to represent Kuhl pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A.

On August 14, 2013, the parties filed a Plea Agreement whereby Kuhl agreed to plead guilty to the receipt of child pornography offense charged in Count Two of the indictment.  (Doc. 24.)  Kuhl acknowledged in the written Plea Agreement his understanding that he was pleading guilty to an offense that required the imposition of a

---

[1]  In the state-court proceedings, Kuhl had been assigned counsel and had obtained at least some discovery from the state.  (*See* Doc. 52 ¶¶ 2, 6.)  The state-court charges were ultimately dismissed, apparently without prejudice.  (*See id.* at ¶ 3.)

five year mandatory minimum term of imprisonment.  (*Id.* at ¶ 2.)  He also stipulated

within the agreement that the government could prove the following facts beyond a

reasonable doubt:

> In approximately February 2011, in . . . Newport, Vermont, within the
> District of Vermont, JOHN KUHL gave a cellular telephone to a then-12[-
> ]year[-]old minor female.  The minor female used the telephone to take
> photographs of her nude genitalia, which images she then sent to KUHL by
> text using the cellular telephone network, a facility of interstate commerce.
> During a statement given to Newport Police Officers on April 20, 2011,
> Kuhl acknowledged that he possessed a picture of [a] vagina on his
> telephone, and that this image was sent to him from the phone he had given
> to the minor female.  He also said that he thought that the image depicted a
> female relative of the minor female's, who was then also a minor.

(*Id.* at ¶ 4.)

In the Plea Agreement Kuhl acknowledged the he understood the elements of the

offense to which he was pleading guilty and that he also understood his constitutional

rights.  (*Id*. at ¶¶ 6–7.)  Kuhl further acknowledged that by his plea of guilty he was

waiving those rights.  (*Id.* at ¶ 7.)  Kuhl stated in the Plea Agreement that he was pleading

guilty because he was, in fact, guilty of the offense of receipt of child pornography.  (*Id.*

at ¶ 3.)  The government agreed to move to dismiss Count One at the time of sentencing

(*id.* at ¶ 15(a)), and to not prosecute Kuhl for any other offenses known to it (*id.* at ¶

15(b)).  The government further agreed to recommend at the time of sentencing that Kuhl

had manifested an acceptance of responsibility for his commission of the offense

pursuant to USSG § 3E1.1(a) and (b).  (*Id.* at ¶ 15.)  The parties stipulated pursuant to

Fed. R. Crim. P. 11(c)(1)(C) that with regard to imprisonment, a sentence of 60 months

was appropriate, this being the mandatory minimum term of imprisonment for the section 2252(a)(4) violation.  (*Id.* at ¶ 16.)

On August 15, 2013, Kuhl appeared in the district court to enter a plea of guilty to Count Two of the Indictment pursuant to the Plea Agreement.  (Doc. 49.)  Chief Judge Reiss began the proceeding by noting the binding nature of the Rule 11(c)(1)(C) Plea Agreement, and explained that acceptance of the plea agreement would be deferred until the court's consideration of the Presentence Report.  (*Id.* at 3.)  The court observed that if the parties' Plea Agreement was accepted, the court would be required by statute to impose the 60-month sentence, but if the Plea Agreement was not accepted, Kuhl would be permitted to withdraw his guilty plea and return to "being presumed innocent."  (*Id.*)

At the hearing, the court engaged in the colloquy required by Rule 11 of the Federal Rules of Criminal Procedure.  Kuhl stated under oath that he had had a full opportunity to review the Indictment, to discuss the charges and any defenses he might have with his attorney.  (*Id.* at 6.)  Kuhl was asked if he was satisfied with Attorney McColgin's representation, and Kuhl responded: "[v]ery much so."  (*Id.* at 7.)  Upon further inquiry, Kuhl indicated that he fully understood the Plea Agreement and that he had not been coerced into entering into the agreement.  (*Id*. at 7–8.)  Kuhl indicated that he understood that if the Plea Agreement was accepted the court would be bound to impose the agreed upon sentence.  (*Id.* at 8.)

The court then reviewed the elements of the offense charged in Count Two and explained the minimum and maximum penalties Kuhl faced as a consequence of his guilty plea.  (*Id.* at 22–24.)  The government was asked to state the factual basis for the

charge.  At the conclusion of the government's proffer of evidence, Kuhl expressed

disagreement with the prosecutor's statement of facts.  More precisely, Kuhl asserted

that, when interviewed by investigators, Kuhl stated he thought that the female victim

who sent the image to him was older than 12 years of age.  (*Id.* at 25.)  In light of this

assertion, the court adjourned the change of plea proceeding.  (*Id.* at 35.)

On August 16, 2013, the parties filed an Amended Plea Agreement.  (Doc. 26.)

Kuhl again agreed to plead guilty to Count Two, which carried the five year mandatory

minimum penalty set forth in 18 U.S.C. § 2252(b)(1).  This agreement included an

express waiver of Kuhl's right to pursue a direct appeal and a collateral attack (except a

claim of ineffective assistance of counsel) in the event the court imposed the parties'

recommendation of a 60-month sentence.  (*Id.* at 4–5.)  The Amended Plea Agreement

also included a revised Stipulation of Facts:

> In approximately February 2011, in . . . Newport, Vermont, within the
> District of Vermont, JOHN KUHL gave a cellular telephone to a then-12[-
> ]year[-]old minor female.  The minor female used the telephone to take
> photographs of her nude genitalia, which images she then sent to KUHL by
> text using the cellular telephone network, a facility of interstate commerce.
> During a statement given to Newport Police Officers on April 20, 2011,
> KUHL acknowledged that he possessed a picture of [a] vagina on his
> telephone, and that this image was sent to him from the phone he had given
> to the minor female.  He also acknowledged that he knew that this image
> was of a minor female when he received it.  An examination of KUHL's
> cellular telephone was conducted, and on it the following images of the 12-
> year[-]old minor female were found: 0219111145.jpg and 0219111150.jpg.

(Doc. 26 ¶ 4.)

On August 21, 2013, Kuhl again appeared in the district court to enter a change of

plea, consistent with the Amended Plea Agreement.  This time, the court engaged in the

complete colloquy required by Rule 11.  (Doc. 50.)  Kuhl acknowledged under oath that he had had an opportunity to discuss the Amended Plea Agreement with Attorney McColgin prior to signing it, that his attorney had answered all of his questions, and that he was satisfied with Attorney McColgin's representation.  (*Id.* at 6.)  The court once again explained to Kuhl that it would follow the sentence outlined in the Amended Plea Agreement if the agreement was accepted by the court.  (*Id.* at 10.)  The court ascertained that Kuhl was not threatened, pressured, or coerced into signing the Amended Plea Agreement or entering the guilty plea, and that Kuhl understood the conditions of the plea.  (*Id.* at 7.)

The court explained various rights to Kuhl and further explained to Kuhl that he would be waiving those rights by his plea, including his civil rights, right to appeal, and trial rights.  (*Id.* at 8–11.)  The court explained the essential elements of the charge, the minimum and maximum mandatory penalties for the crime, and the factual basis for the charge.  (*Id.* at 13–15.)  Kuhl agreed that the government could prove the elements of Count Two beyond a reasonable doubt, that the government had accurately stated the facts surrounding his commission of the offense in Count Two, and that he was pleading guilty because he was, in fact, guilty of the charge.  (*Id.* at 13–16.)  The court concluded that Kuhl was fully competent and capable of entering an informed plea, that the plea was made voluntarily, and that there was an independent basis in fact containing each essential element of the offense.  (*Id.* at 16–17.)  Accordingly, Kuhl's plea of guilty was accepted, and Kuhl was adjudged guilty of the offense.  (*Id.* at 17.)

## II.      Sentencing

Prior to sentencing, the United States Probation Office completed a Presentence Investigation Report ("PSR").  The PSR concluded that Kuhl faced a Sentencing Guideline range of 63–78 months based on an offense-level calculation of 26 and a Criminal History Category of I.  (PSR ¶ 99.)

Both parties submitted memorandums outlining their respective positions regarding sentencing.  (Docs. 32 and 39.)  Attorney McColgin argued that the PSR erroneously included pattern-of-activity and computer enhancements found in USSG § 2G2.2, asserting that the guideline range without those enhancements was 24 to 30 months.  (Doc. 32 at 1–2.)  McColgin argued that the pattern-of-activity enhancement was based upon the Kuhl's state charges, which were dismissed.  (*Id.* at 3 n.2.) McColgin also contended that the enhancement for use of a computer was improper, asserting that the definition of "computer" did not include cell phones.  (*Id.* at 3–4.) Recognizing that the mandatory minimum penalty set forth in the statute controlled, McColgin requested that the court impose only the "mandatory minimum sentence of 60 months," and a term of supervised release not longer than the mandatory five-year term. (*Id.* at 5.)

In its memorandum, the government acknowledged that if the court were to accept the Amended Plea Agreement, the contested enhancements were moot points, and therefore it would not seek application of either enhancement.  (Doc. 39 at 2.)  The government argued that the agreed-upon term of 60 months was appropriate.  (*Id.*)  The

government urged the court to impose a term of supervised release longer than five years because Kuhl presented a "significant risk of recidivism." (*Id.* at 3.)

On January 2, 2014, Kuhl appeared in the district court for sentencing. (Doc. 51.) The court indicated its acceptance of the Amended Plea Agreement. (*Id.* at 2.) Kuhl informed the court that he had read the PSR, and that there were no factual errors other than those pertaining to the dismissed state charges. (*Id.*) The court adopted the PSR as its findings of fact, and stated its intention to impose the mandatory minimum term of imprisonment of 60 months. (*Id.* at 3.)

Attorney McColgin reiterated the objections to the conclusions in the PSR applying the offense-level enhancements found at USSG § 2G2.2(b)(5) for a pattern of activity for the sexual abuse of a minor and the computer enhancement found in USSG § 2G2.2(b)(6). (*Id.* at 5.) Attorney McColgin explained that, even though these issues were moot because of the five-year mandatory minimum term of imprisonment, he raised the objections to preserve the record and the accuracy of the PSR, and because the enhancements might have relevance toward Kuhl's Bureau of Prisons' security-factor score. (*Id.*) The government did not oppose these objections (*id.*) and, as a result, the court declined to apply the enhancements (*id.* at 12). Attorney McColgin argued that because the parties agreed to a 60-month sentence, the Sentencing Guidelines applied only to the supervised-release term, and asked the court to impose only the mandatory minimum of five years. (*Id.* at 6.) The government requested a term of supervised release of ten years. (*Id.* at 10.)

8

The court engaged in a calculation pursuant to the Sentencing Guidelines. (*Id.* at 16.)  Beginning with a base offense level of 22, Kuhl received a three-point reduction for his acceptance of responsibility, bringing his total offense level to 19. (*Id.*)  Kuhl had no countable prior convictions placing his Criminal History Category (CHC) at I.  The guideline-imprisonment range for offense level 19/CHC I is 30 to 37 months, and the guideline term for supervised release is five years to life. (*Id.* at 17.)  Because the offense carried a mandatory minimum term of imprisonment of five years, the court imposed the five-year term of imprisonment. (*Id.*)  The court also imposed a five-year term of supervised release. (*Id.* at 20.)  The court advised Kuhl of his right to an appeal, and then reminded that Kuhl had agreed in the Amended Plea Agreement to waive that right. (*Id.* at 27.)  Kuhl did not pursue a direct appeal.

<u>Discussion</u>

### I.  Kuhl's § 2255 Motion

Kuhl's grounds for relief overlap somewhat, but can be summarized as claims that Attorney McColgin was ineffective for: (1) convincing or coercing him into pleading guilty; (2) failing to conduct a sufficient investigation; and (3) failing to submit exculpatory evidence prior to Kuhl's guilty plea or in mitigation of sentence, including certain "transcripts" of "witness depositions."  (*See* Doc. 42 at 4–5, 7–8.)

Kuhl also makes other allegations in his § 2255 Motion and related filings: first, Kuhl asserts that a Fifth Amendment violation of his right to due process occurred (Doc. 42 at 7); second, he claims that errors occurred in preparing "the narrative in the [d]iscovery" (*id.* at 8); third, Kuhl alleges intentional withholding of unspecified

laboratory reports in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (Doc. 54); and finally, Kuhl makes a vague claim of police corruption (Docs. 42, 54, 56, 57).  Kuhl states that "[f]inding coun[sel] ineffective is not [his] goal," but rather, "getting the truth known is."  (Doc. 56 at 2.)  Although he asserts his innocence, Kuhl only seeks "relief from a sent[e]nce that is disproportionate to the crime."  (Doc. 42 at 13.)  Kuhl has also requested a hearing "to determine all relevant factors."  (Doc. 56 at 2.)

## II.  Waiver

"[A] § 2255 motion is not a substitute for direct appeal," and courts "will not afford collateral review to claims that a petitioner failed properly to raise on direct review unless the petitioner shows (1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence."  *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012); *see Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011).  Furthermore, it "is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction."  *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987) (citation omitted).

Kuhl claims his Fifth Amendment right to due process was violated because he was not presumed innocent during the proceedings.  (Doc. 42 at 7.)  Of course, once Kuhl pleaded guilty, he was no longer subject to a presumption of innocence.  (*See* Doc. 50 at 17.)  Kuhl was advised of this when he changed his plea.  Kuhl also makes vague claims of police misconduct in the investigation of the state allegations and he asserts a claim of

a discovery violation.  But Kuhl is procedurally barred from pursuing these claims

because of his guilty plea.  *See United States v. Simmons*, 763 F.2d 529, 533 (2d Cir.

1985) (entering a guilty plea preserved only specifically mentioned issues, and waives all

other nonjurisdictional claims); *see also United States v. Yousef*, 750 F.3d 254, 258 (2d

Cir. 2014).  He has also waived these claims by not pursing a direct appeal and failing to

show good cause to excuse his failure to pursue a direct appeal or, alternatively, a

showing of actual innocence.

Kuhl has also waived these claims by his express waiver of a direct appeal and

collateral review set forth in the Amended Plea Agreement.  There, Kuhl agreed to:

> [N]ot file a direct appeal, or collaterally attack in any proceeding, including
> but not limited to a motion under 28 U.S.C. §§ 2255 or 2241 (except a
> Section 2255 motion claiming ineffective assistance of counsel), the
> conviction or sentence of imprisonment imposed by the Court if that
> sentence does not exceed 60 months. JOHN KUHL expressly
> acknowledges that he is knowingly and intelligently waiving his appellate
> rights.

(Doc. 26 ¶ 12.)  The Second Circuit has "long enforced waivers of direct appeal rights in

plea agreements, even though the grounds for appeal arose after the plea agreement was

entered into."  *Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001) (per

curiam).  Not only are waivers of direct appeal enforceable, but there is also no general

bar to a waiver of collateral-attack rights in a plea agreement.  *See id.*  Here, the

Amended Plea Agreement contained both such waivers, excluding only a 28 U.S.C.

§ 2255 motion alleging ineffective assistance of counsel.  (*See* Doc. 26 ¶ 12.)

### III.  Standards Governing Ineffective-Assistance-of-Counsel Claims

Unlike his other claims, Kuhl's ineffective-assistance claims may be raised for the first time in a § 2255 motion, "whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504, 509 (2003); *accord Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010).  In criminal proceedings, a defendant has a Sixth Amendment right to effective assistance from his attorney at all stages of the proceedings, including entering a plea of guilty, *see, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see generally Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012), and sentencing, *see, e.g.*, *Glover v. United States*, 531 U.S. 198, 202–04 (2001); *Mempa v. Rhay*, 389 U.S. 128, 134 (1967).  The attorney has an "overarching duty to advocate the defendant's cause."  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

In order to succeed on a claim of ineffective assistance of counsel, a claimant must meet the two-pronged test established by *Strickland*:

> (1) he "must show that counsel's performance was deficient," [*Strickland*,] 466 U.S. at 687, 104 S. Ct. 2052, so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *id.* at 690, 104 S. Ct. 2052; and (2) he must show "that the deficient performance prejudiced the defense," *id.* at 687, 104 S. Ct. 2052, in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S. Ct. 2052.

*Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011).  "The [ineffective-assistance-of-counsel] claim must be rejected if the defendant fails to meet either the performance prong or the prejudice prong."  *Id.* at 85.

Regarding the first prong of the *Strickland* analysis, an attorney's representation is deficient when it falls "below an objective standard of reasonableness," as determined by reference to "prevailing professional norms."  *Strickland*, 466 U.S. at 688; *see Morales v. United States*, 635 F.3d 39, 43 (2d Cir. 2011).  The question is not whether counsel "deviated from best practices or most common custom," but whether his representation "amounted to incompetence under 'prevailing professional norms.'"  *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 690). "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).

In assessing the attorney's performance, a court "must apply a 'heavy measure of deference to counsel's judgments,'" *id.* (quoting *Strickland*, 466 U.S. at 691), and recognize a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Palacios v. Burge*, 589 F.3d 556, 561 (2d Cir. 2009) (internal quotation marks omitted).  "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,'" *id.* at 588 (quoting *Strickland*, 466 U.S. at 690).  Moreover, "'strategic choices made after a less than complete investigation

13

are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 690–91).

As to the second *Strickland* prong, counsel's performance is prejudicial when it is so poor as to "undermine confidence in the outcome" of the proceedings such that there is a "reasonable probably that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see Morales*, 635 F.3d at 43. In the context of a guilty plea, "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. In the sentencing context, a defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence. *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). *See generally Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012); *Glover*, 531 U.S. at 203.

A § 2255 petitioner bears the burden of proof to prove his claims by a preponderance of the evidence. *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000) (petitioner failed to demonstrate a divergence between his interests and those of his attorney's on any factual matter, legal issue, or course of action). "Self-serving conclusory allegations . . . are insufficient to establish ineffective assistance of counsel." *Blumenberg v. United States*, Nos. 05 Civ. 9416(JGK), 01 Cr. 571(JGK), 2009 WL 3459185, at *3 (S.D.N.Y. Oct. 27, 2009) (citing *United States v. Torres*, 129 F.3d 710, 715–17 (2d Cir. 1997)).

IV.    **Analysis of Kuhl's Ineffective-Assistance-of-Counsel Claims**

As summarized above, Kuhl asserts several arguments in support of his claim that he was denied effective assistance of counsel.  None of his arguments satisfy the demanding *Strickland* standard.

A.    **Alleged Coercion**

Kuhl alleges that Attorney McColgin "convinced [him] that [he] couldn't win," however, "because he [c]ould not, or [w]ould not[,] be able to prove [his] innocence." (Doc. 42 at 5 (emphasis omitted).)  Presumably Kuhl is arguing that his guilty plea was not made voluntarily.  "'[A] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.'"  *United States v. Doe*, 537 F.3d 204, 211 (2d Cir. 2008) (quoting *Machibroda v. United States*, 368 U.S. 487, 493 (1962)).  The Supreme Court has held that threats, promises, or misrepresentation may provide grounds for an attack on the voluntary nature of the plea of guilty.  *See Brady v. United States*, 397 U.S. 742, 755 (1970).  Here, Kuhl has made no allegations of threats, promises, or misrepresentations on the part of either the government or Attorney McColgin. Regardless, as discussed below, his present assertions are insufficient to rebut his statements under oath that he was not threatened, pressured, or coerced into signing the Amended Plea Agreement or entering the guilty plea.  (*See* Doc. 42 at 7.)

Kuhl's post hoc claim of attorney coercion is inadequate.  During his plea allocution, Kuhl admitted his guilt under oath, stated that his plea was free and voluntary, and that no threats or promises had been made to induce his plea.  (Doc. 50 at 7.)  These in-court statements carry a "'strong presumption of verity.'"  *United States v. Davis*, 48

F. App'x 809, 811 (2d Cir. 2002); (quoting *United States v. Gonzalez*, 970 F.2d 1095,

1101 (2d Cir. 1992)).  They create a "formidable barrier" to habeas relief.  *See*

*Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Adames v. United States*, 171 F.3d

728, 732 (2d Cir. 1999) (holding that a "criminal defendant's self-inculpatory statements

made under oath at his plea allocution . . . are generally treated as conclusive in the face

of the defendant's later attempt to contradict them").

        Kuhl cannot escape his admissions both in his Plea Agreement and his sworn plea

allocution.  "'A defendant's bald statements that simply contradict what he said at his

plea allocution are not sufficient grounds'" to contradict a guilty plea.  *Davis*, 48 F.

App'x at 811 (quoting *United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001)).  At the

first change-of-plea hearing, when asked if he was satisfied with his representation, he

responded, "[v]ery much so."  (Doc. 49 at 7.)  At the second change-of-plea hearing,

Kuhl stated under oath that he had discussed the Plea Agreement with Attorney

McColgin; his attorney had answered all his questions; and he was satisfied with

Attorney McColgin's representation.  (Doc. 50 at 6.)

        Furthermore, Kuhl's conclusory allegations do not suggest that Attorney

McColgin was "doing more than vigorously urging him to accept a plea agreement in a

case that, in his legal opinion, was hopeless."  *Davis*, 48 F. App'x at 812.  *See United*

*States v. Juncal*, 245 F.3d 166, 172 (2d Cir. 2001) (defense counsel's "blunt rendering of

an honest but negative assessment of appellant's chances at trial, combined with advice to

enter the plea," does not constitute improper behavior or coercion that would suffice to

invalidate a plea).

### B.      Alleged Failure to Investigate

Kuhl alleges that Attorney McColgin failed to pursue evidence that would have exonerated him.  (Doc. 42 at 7.)  Kuhl contends that one witness, Anne Wilson, would have provided exculpatory evidence.  (Doc. 56 at 2.)  According to Kuhl, Wilson would have testified to her belief that the parents of the juvenile complainant in the case "were in on this all together, and they were all doing Vicodins together."  (Doc. 42-1; *see also* Doc. 52 at 2.)  Kuhl also asserts that Wilson told his attorney in the state prosecution and the police that an individual by the name of Ken Wilson admitted that he "set the whole thing up."  (Doc. 56 at 2.)

McColgin's affidavit paints an entirely different picture.  Prior to Kuhl's plea of guilty, McColgin tasked his investigator with locating Wilson.  The investigator determined that Wilson had moved and could not find her.  (Doc. 52 ¶¶ 1, 5.)[2]  According to Attorney McColgin, he had reviewed the transcript of an interview of Wilson conducted by a defense investigator in the state prosecution.  McColgin explains that had Wilson been called to testify, she would not have provided useful testimony to the charge of knowingly possessing child pornography.  (*Id.* at ¶ 6.)  In fact, Attorney McColgin believed that Wilson's testimony would be unhelpful to Kuhl, since she also stated that "she never left Mr. Kuhl alone with her daughter, and that Mr. Kuhl seemed

---

[2]  Wilson moved, and she was never located.  Kuhl also claims the government, not Attorney McColgin, was deficient in its ability to locate Wilson.  (Doc. 56 at 2.)  As previously explained, Kuhl waived any claims of prosecutorial misconduct by virtue of his guilty plea.  *See Simmons*, 763 F.2d at 533.

inappropriately partial to little girls." (*Id.*)  Attorney McColgin also concluded that it was

in Kuhl's best interest to not present the same evidence at sentencing.  (*Id.*)

"Courts applying *Strickland* are especially deferential to defense attorneys'

decisions concerning which witnesses to put before the jury.  'The decision not to call a

particular witness is typically a question of trial strategy that [reviewing] courts are ill-

suited to second-guess.'"  *Greiner*, 417 F.3d at 323 (alteration in original) (quoting

*United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998)); *see also Eze v. Senkowski*,

321 F.3d 110, 129 (2d Cir. 2003) ("A defense counsel's decision not to call a particular

witness usually falls under the realm of trial strategy that we are reluctant to disturb.").

In fact, a decision not to call an exculpatory witness "is ordinarily not viewed as a lapse

in professional representation."  *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000)

(internal quotation marks omitted); *see also Dupont v. United States*, 224 F. App'x 80, 82

(2d Cir. 2007) (finding that even if alibi evidence did exist, "the trial attorney's decision

not to call the purported alibi witnesses was a reasonable tactical decision").  Here, the

decision to not present Wilson as a witness, or her information, was one of strategy that

should be accorded deference under *Strickland*.

### C.    Alleged Failure to Present Other Evidence on Kuhl's Behalf

Kuhl argues in a related claim that the other evidence "was not appropriately

submitted to the proceedings" which he describes as "witness/police contact" (Doc. 42 at

4); laboratory examinations (*id.*), dismissed state charges (*id.*), detective depositions (*id.*);

and finally, "witness deposition[]" transcripts (*id.* at 8.)  Kuhl's contentions are meritless.

Kuhl's references to exculpatory evidence are both vague and conclusory.  In order to prevail on a 28 U.S.C. § 2255 motion, a "petitioner must set forth *specific facts which he is in a position to establish by competent evidence.*"  *Dalli v. United States*, 491 F.2d 758, 761 (2d Cir. 1974) (emphasis added) (citing *Machibroda*, 368 U.S. at 495–96).  Moreover, "[a] defendant's bare allegations in a § 2255 petition cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth."  *Mejia v. United States*, 740 F. Supp. 2d 426, 429 (S.D.N.Y. 2010); *see United States v. Hernandez*, 242 F.3d 110, 112–13 (2d Cir. 2001) (per curiam) (holding that court was entitled to rely on defendant's sworn statements made in open court); *see also Juncal*, 245 F.3d at 171 (a plea allocution carries a strong presumption of accuracy).

Kuhl alleges that the "pros[e]cution[']s evidence is the exonerating factor," and that the laboratory reports "were INTENTIONALLY withheld from the discovery report by the arresting officer[']s BOYFRIEND"[3] and "clearly decides that there is no way to identify anyone."  (Doc. 54.)  Kuhl further alleges that Attorney McColgin did not subpoena witnesses and police officers, and that he did not submit detective depositions of these individuals.  (Doc. 42 at 4.)  But Kuhl does not set forth what facts in the testimony or depositions would have led to his exoneration from the child pornography charge.  (*See id.*)  The only specific fact Kuhl alleges is that a laboratory report showed there was "no way to identify anyone" in the photographs.  (Doc. 54.)

---

[3]  As previously mentioned, Kuhl waived any challenges to prosecutorial misconduct by pleading guilty.  *See Simmons*, 763 F.2d at 533.  Therefore, I examine this statement only in context of his ineffective-assistance-of-counsel claim.

Again, Kuhl's assertions are insufficient to rebut his admissions under oath when entering his plea of guilty.  (Doc. 50 at 13–16.)  As stated above, Kuhl also admitted to the factual basis for his plea in his Amended Plea Agreement.  (Doc. 26 ¶ 4.)  And Kuhl acknowledged in his Amended Plea Agreement the elements of the crime:

> 1. The defendant knowingly received a visual depiction; 2. The visual depiction was transported in or affecting interstate or foreign commerce, or was produced using materials that had been transported in or affecting interstate or foreign commerce; 3. The production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and portrays that minor engaged in that conduct; and 4. The defendant knew that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and portrayed a minor engaged in that conduct.

(*Id.* at ¶ 6.)  Kuhl alleges that the person in the image was unidentifiable.  These after–the–fact contentions also conflict with the information about the offense conduct set forth in the PSR.  The victims of Kuhl's offense conduct were all identified, although they were referred to by their initials in the PSR to protect their privacy.  (*See* PSR ¶¶ 9, 11.)  Regardless, victim identification is not an element of the crime to which Kuhl pleaded guilty, so these contentions are of no relevance.

Ignoring the record, Kuhl also claims Attorney McColgin failed to argue at sentencing that the state charges against Kuhl had been dismissed.  (*See* Doc. 42 at 8.)  On the contrary, in Kuhl's sentencing memorandum, Attorney McColgin indeed argued that all charges were dismissed.  (Doc. 32 at 3 n.2.)  In addition, the court declined to consider the dismissed state charges at sentencing:

> I am not going to take into consideration the dismissed charges.  I don't know what happened there.  Nobody, no court has decided what happened there.  It sounds like it gave rise to the offense, but it sounds like there's

> nothing that's been established who did what to whom.  And so I am not
> going to over-punish you for something that's been dismissed in another
> case.

(Doc. 51 at 18.)  It is clear that this claim fails both *Strickland* prongs.

Finally, Kuhl alleges that Attorney McColgin failed to present transcripts of "witness depositions" at the sentencing hearing.  (Doc. 42 at 8.)  Kuhl alleges that these transcripts show that the police had an arrangement to "conjur[e] charges on [him] and did exactly that," and that "the arresting officer was clearly in a relationship with the Federal (ICE) Agent [who] prepared the narrative in . . . [d]iscovery."  (*Id.*)  Kuhl has filed partial transcripts which include an apparent conversation between Kuhl and "Ms. Wilson" (*see* Doc. 42-1, Doc. 54-1 at 3); a conversation between "Anne" and an unknown individual (*see* Doc. 54-1 at 7); and a conversation between two unknown individuals (*see* Doc. 54-1 at 1).  They also contain Kuhl's handwritten and typewritten notes seemingly inserted into the transcripts for the purpose of assisting in identifying speakers and clarifying the issues presented within.  The transcripts Kuhl submitted are incomplete, undated, and lack reliability.  But more importantly the transcripts do nothing to disturb Kuhl's admissions in the Amended Plea Agreement and at his change-of-plea proceedings that he committed the offense of receipt of child pornography.

With regard to his claim of police corruption, McColgin states he was unable to corroborate Kuhl's claim.  (Doc. 52 ¶ 8.)  "A lawyer's decision not to pursue a defense does not constitute deficient performance if . . . the lawyer has a reasonable justification for the decision."  *DeLuca*, 77 F.3d at 588 n.3.  In addition, the failure to make a meritless argument does not establish ineffective assistance.  *See Aparicio v. Artuz*, 269

F.3d 78, 99 (2d Cir. 2001).  Here, Attorney McColgin reviewed with Kuhl the discovery provided by the government, as well as the discovery provided to Kuhl's assigned counsel in state court, and found no exculpatory evidence.  (Doc. 52 ¶ 3.)

Kuhl's claim also fails the prejudice prong of *Strickland*.  At sentencing, Kuhl received the mandatory minimum sentence of 60 months.  Presenting these documents at sentencing would not have changed the result.

## V.  Actual-Innocence Claim

While Kuhl has not specifically raised an actual-innocence claim for the offense of receipt of child pornography, he makes reference to "innocence" in his Motion and filings.  His assertion of innocence appears related to the dismissed state charges.  It is appropriate to address these references in the event Kuhl meant to raise an actual-innocence claim with respect to the federal charge.  As set forth above, "a § 2255 motion is not a substitute for direct appeal," but courts may review claims not raised on direct appeal if petitioner can show actual innocence.  *Harrington*, 689 F.3d at 129; *see Bousley*, 523 U.S. at 622; *Thorn*, 659 F.3d at 231.

In order to demonstrate a credible claim of actual innocence, "a petitioner must present 'new reliable evidence that was not presented at trial' and 'show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'"  *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000) (quoting *Schlup v. Delo*, 513 U.S. 298, 299, 327–28 (1995)).  "Where the defendant pleaded guilty . . . , and therefore did not have the evidence in his case evaluated by a jury, . . . the petitioner still must show that, 'in light of all the evidence, it

is more likely than not that no reasonable juror would have convicted him.'"  *Id.* (quoting *Bousley*, 523 U.S. at 623).

Here, Kuhl admitted in both his Amended Plea Agreement and change-of-plea hearing to having received child pornography.  (Doc. 26 ¶¶ 4, 6; Doc. 50 at 15.)  The new evidence on which Kuhl bases his actual-innocence claim is one witness's belief that the accusations were a "set up," and that the laboratory reports could not identify the minor in the sexually explicit communication.  As analyzed above, these contentions are meritless.  The identity of the minor victim was clearly known.  Regardless, the offense of conviction did not require a showing of the minor's identity, only her status as a minor, a fact which was the subject of a stipulation.  Kuhl has failed to present any reliable evidence to establish a credible claim of innocence.

## VI.    Hearing Requirement

In ruling on a § 2255 motion, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; *see Pham v. United States*, 317 F.3d 178, 185 (2d Cir. 2003) (section 2255 does not permit summary dismissals of motions that present facially valid claims).  However, § 2255 does not entitle the defendant to a hearing where his allegations are "vague, conclusory, or palpably incredible." *Machibroda*, 368 U.S. at 495; *see Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001).  To warrant a hearing, the defendant's motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact which, if proved at a hearing, would entitle him to relief.  *See Machibroda*, 368 U.S. at 494; *United States v.*

*Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987).  Kuhl has failed to show specific facts which, if proved at a hearing, would entitle him to relief.  Thus, no hearing is required.

### Conclusion

For these reasons, I recommend that Kuhl's § 2255 Motion (Doc. 42) be DENIED.

Dated at Burlington, in the District of Vermont, this 24th day of November, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).